Joseph GOMEZ, et al., Plaintiff,

v.

TOWNE BANCORP, INC.,
et al., Defendant.

No. 3:98CV7436.

United States District Court,
N.D. Ohio,
Western Division.

July 30, 2002.

Barbara Q. Smith, Dennis E. Murray, Jr., Murray & Murray, Sandusky, OH, Charles D. Niehaus, Kevin J. Kenney, Kenney & Niehaus, Sylvania, OH, for Jo-

seph Gomez, Read Backus, Harold T. Ranville, Robert H. Betttinger, Linda Whiteacre, Daniel Whiteacre, Ann Stahl Crowley.

Gregory R. Elder, Marvin A. Robon, Walter A. Winslow, Barkan & Robon, Toledo, OH, Kevin J. Kenney, Kenney & Niehaus, Sylvania, OH, for Towne Bancorp, Inc.

Timothy D. Connors, Toledo, OH, for Jerome C. Bechstein, Lois A. Brigham.

Anthony J. O'Malley, Lisa B, Forbes, Vorys, Sater, Seymour & Pease, Cleveland, OH, Ernest E. Vargo, Jr., Baker & Hostelter, Cleveland, OH, for Progressive Casualty Ins. Co.

Kenneth C. Baker, Matthew D. Harper, Eastman & Smith, Toledo, OH, for Huntington Trust Co.

## ORDER

CARR, District Judge.

This case involves claims by investors in a failed bank corporation, Towne Bancorp, Inc. (Towne). All claims have been resolved by settlement between the plaintiffs, Towne's directors, the director's liability insurer, Progressive Insurance Company (Progressive), and Towne's escrow agent, Huntington Trust Company (Huntington). Pending are three motions by Towne's counsel, Barkan & Robon, for authority to withdraw funds from Towne's remaining funds. Plaintiffs have opposed, in part, the first request.

To the extent that the requests seek approval for payments to payees other than Barkan & Robon, the requests shall be granted. The request by Barkan & Robon shall be reduced by a factor of twenty percent on the basis of delay and duplication during the months preceding the final settlement agreement.

Prior to the instant requests, Barkan & Robon had submitted, and this court had approved, payment of several bills, including bills for legal fees for services provided by Barkan & Robon, in the amount of $278,462.38. The current requests seek legal fees for:

| | |
|---|---|
| May 1 to October 31, 2001 | $32,591.32 [Doc. 326] |
| Nov. 1, 2001 to May 31, 2002 | 9,875.00 [Doc. 371] |
| June 1 to June 28, 2002 | 6,410.50 [Doc. 380] |
| July 1, 2002—termination of services | 6,000.00 [Id.] [1] |
| Total: | $54,876.82 |

The plaintiffs' partial opposition to the first of the pending requests (Docs.336, 337) and Towne's reply (Doc. 342) to that opposition detail the parties' conflicting views about the necessity for much of the work for which Barkan & Robon seeks to be compensated. Full adjudication of that dispute (i.e., to the extent needed to make specific findings by a preponderance of the evidence as to each of the contested items) would require the expenditure of substantial resources. No useful end would be served by making, and requiring the parties (or their lawyers) to make, that investment as this case at long last takes its final steps to termination, and the ill-fated Towne Bancorp stumbles its weary way into oblivion.

Certain indisputable facts convince me, however, that a modest—i.e., twenty percent—reduction in the fees requested by Barkan & Robon is appropriate, and minimally acknowledges unnecessary delay and unjustified expenditure of time on that firm's part, particularly with regard to a settlement between plaintiffs and Progres-

---

1. The request for the final payment of $7,500 does not give an estimate of the amount to be expended for legal fees and other expenses. The percentage of the total request allocated to legal fees in the other pending requests is approximately 75% (Doc. 326), 60% (Doc. 371), and 85% (Doc. 380). In light of these percentages, I assume that $6,000 of the $7,500 requested for the final winding-up of this case is sought for legal fees.

sive, before final resolution was accomplished.

On May 2, 2001, counsel for Progressive notified Barkan & Robon that the plaintiffs had settled Towne's claim against Progressive on Towne's directors' and officers' liability policy. While Barkan & Robon asserts in its reply to plaintiffs' partial opposition that this settlement was unfavorable to the bank, no timely notice was ever given to the court of any such substantive objection.

Instead, Barkan & Robon began what was to become a protracted long-distance process of communicating objections to various aspects of the proposed settlement and ensuing revisions to plaintiffs' counsel, to which plaintiffs' counsel would respond. Whereon, further objections and responses would be exchanged.

There was, so far as I can tell from the record before me, no face-to-fact meeting between counsel during the six months following initial notification of the settlement between the plaintiffs and Progressive. Instead, the entire exchange was conducted by letter, fax, email, and phone. This manner of "negotiating" was hardly conducive to resolving the game of three-cornered tennis being played by Barkan & Robon on behalf of Towne, counsel for the plaintiffs, and counsel for Progressive.

Barkan & Robon, as the entity voicing continuing objections to the proposed settlement, had an obligation to take steps to truncate this process, and to see that it ended sooner, rather than later. Its duty to move quickly to resolve whatever issues were in genuine dispute was heightened by the fact that delay could lead to wasting of Towne's remaining assets—a major portion of which already had been expended on legal fees and other expenses.

Most simply and obviously, Barkan & Robon could and should have requested either a face-to-face conference between all counsel or a conference with the court. It did neither, and the process dragged on interminably. On November 9, 2001, concerned about the apparent lack of resolution regarding a settlement of which I had been informed several months earlier, I set a final settlement conference for November 26, 2001. Attached to the order was a memorandum to all counsel, which stated:

> Some months ago, I was informed that there had been a settlement in principle between the plaintiffs and the Towne Bank. I recall having had a conference to confirm that fact several weeks ago. I expected to receive settlement papers shortly thereafter.
>
> Nothing has been filed.
>
> The purpose of this memo is to notify you that I am setting this matter for a final settlement conference on Monday, November 26, 2001, at 5:00 p.m., and will continue until either all necessary documents have been signed or a final determination is reached that settlement is not to be accomplished.
>
> The parties and lead counsel with full authority to settle all matters in dispute are to attend this conference in person. The Bank's board is to attend in person, or have provided its representative with either a corporate resolution giving that representative full authority to conclude negotiations and execute settlement and related documents, or have provided a board member in attendance with a proxy to do likewise.
>
> I urge the parties to consent to resolution by me, by whatever means and process (or lack thereof) of any matters remaining in dispute.
>
> I expect that either all necessary documents to move this case to its next stage will be revised, if needed, and signed at

that conference. If not, this case will set for trial forthwith.

If signed documents are received in my office not later than noon, November 26th, the conference will be cancelled.

Rather than sending its lead counsel, Marvin Robon, to that conference, as expressly directed in the memorandum, Barkan & Robon sent the most junior of the three attorneys from that office who had worked on the case. At the outset of the conference, it became immediately clear that he had no authority to settle, and had been sent to do nothing other than to express Barkan & Robon's continuing objections to various aspects of the most recent response from plaintiffs' counsel.

After some delay, Mr. Robon, who had elected to attend to a personal errand, rather than to comply with the order commanding his attendance at the conference, appeared. Less than an hour thereafter, all counsel informed me that agreement had been reached as to all matters remaining in dispute between Towne, Barkan & Robon and counsel for plaintiffs and Progressive.

The brevity of the time needed to reach the final settlement, once all counsel were in the same room, and working together face-to-face, rather than by long distance, convinces me that, had such meeting occurred sooner, substantial delay and expense would have been avoided.

As noted, I fault Barkan & Robon for its failure to have requested such meeting shortly after it came to the conclusion that there were problems with the settlement between plaintiffs and Progressive, and that those problems were not being promptly resolved.[2] It had a fiduciary duty to Towne and its shareholders to avoid unnecessary disbursement of Towne's dwindling assets. In light of that duty, and, as well, in light of this court's repeated admonitions to avoid wasting those assets, Barkan & Robon should have been more diligent in reaching an agreement with regard to Progressive settlement.

I conclude, accordingly, that a twenty percent reduction in the pending requests for legal fees is appropriate. I am convinced beyond any question that, had Barkan & Robon taken the initiative several months before the settlement was finally reached in seeking either a meeting between all counsel, or, most appropriately, a conference between all counsel and the court, the settlement with Progressive would have been reached much sooner, and at much less expense to Towne.

In light of the foregoing, it is

ORDERED THAT

1. Requests by Barkan & Robon for authorization to withdraw funds to pay expenses on behalf of Towne Bancorp (Docs.326, 371, 380) granted with regard to payees other than Barkan & Robon; and

2. Requests for compensation of Barkan & Robon for compensation reduced by 20% (twenty percent); leave granted to make withdrawal as and for compensation to said firm in the amount of $43,901.46 (forty three thousand nine hundred one dollars and forty six cents) granted.

So ordered.

---

2. This is not to say that other counsel could not have likewise sought the court's assistance as soon as it appeared that the settlement process bogged down. But the primary obligation to do so, in my view, was on Barkan & Robon, as it continued to find problems seriatim with the responses to its objections. The meter should have stopped a lot sooner.